UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DUNKIN' DONUTS FRANCHISING, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-519 (TSC) |
| 14th STREET EATERY, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Plaintiff Dunkin' Donuts Franchising, LLC ("Dunkin' Donuts") brings this action against 14th Street Eatery, Inc., Mohammad Hoque, and Yasmin Parveen (collectively, the "Defendants") for breach of contract and trademark infringement. Dunkin' Donuts alleges that Defendants failed to pay franchise and other fees, and as a result Dunkin' Donuts terminated the franchise agreement between the parties. Despite this termination, Defendants continue to operate an eatery holding itself out as a Dunkin' Donuts franchise, thereby infringing Dunkin' Donuts' trademarks and violating the terms of a covenant not to compete. Before the Court is Dunkin' Donuts' motion for a preliminary injunction, which Defendants have failed to oppose. Upon consideration of the uncontested motion, the entire record, and for the following reasons, the motion is granted.[1]

**I.   BACKGROUND**

Dunkin' Donuts is an international franchisor of eateries that sell doughnuts, coffee, bagels, and other related products. (Mot. 1-2). Dunkin' Donuts and its franchisees currently

---

[1] In an exercise of its discretion, the court finds that the motion can be decided without a hearing. LCvR 65.1(d).

operate over 3,700 stores in the United States and over 1,400 stores outside the United States. (*Id.* at 3). As part of its franchise model, Dunkin' Donuts has developed a standardized system of operating and maintaining its restaurants. This system includes the use of registered Dunkin' Donuts trademarks.

Dunkin' Donuts and Defendants entered a franchise agreement in 2011 that permitted Defendants to operate a Dunkin' Donuts franchise at 2001 14th Street NW in the District of Columbia. As part of the franchise agreement, Defendants were required to pay periodic franchise and advertising fees to Dunkin' Donuts, calculated as a percentage of gross sales. (Compl. Ex. A).

In early 2015, Defendants apparently failed to make the necessary payments. As a result, Dunkin' Donuts notified Defendants in writing that Defendants were in breach of the franchise agreement and were required to immediately pay the outstanding fees. After receiving no response, in April 2015 Dunkin' Donuts terminated the franchise agreement with Defendants. Defendants nonetheless continue to operate a restaurant purporting to be a Dunkin' Donuts franchise. According to Dunkin' Donuts, this infringes their trademarks and also violates a provision in the franchise agreement restricting Defendants right to operate a competing restaurant. As a result, Dunkin' Donuts filed the instant lawsuit and moved for a preliminary injunction enjoining the Defendants from continuing to operate an unauthorized Dunkin' Donuts franchise. The Court entered a scheduling order on the motion for a preliminary injunction which Dunkin' Donuts served on Defendants, but Defendants have failed to respond in the three weeks since service was made.

## II. LEGAL STANDARD

In order to prevail on a motion for a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). The moving party must demonstrate a likelihood of success on the merits, *id.*, and some injury, as "the basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 88 (1974) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959)).

## III. ANALYSIS

### a. Jurisdiction

Because Defendants have not responded or appeared, the court will briefly address its jurisdiction to decide the motion. Dunkin' Donuts brings claims for trademark infringement, therefore the court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1116 and 28 U.S.C. § 1338, and may assert jurisdiction over additional state and common law claims pursuant to 28 U.S.C. § 1367. Dunkin' Donuts has also made a *prima facie* showing that the court has personal jurisdiction with respect to the Defendants. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Defendant 14th Street Eatery, Inc. is a corporation organized under the laws of the District of Columbia with its principal place of business in the District, thus establishing personal jurisdiction. D.C. Code § 13–422. Defendants Hoque and Parveen are residents of the Commonwealth of Virginia; however, Dunkin' Donuts avers that both defendants regularly conduct business in the District via their operation of the Dunkin' Donuts franchise in the

District. (Compl. ¶¶ 4-5). This is enough to make a *prima facie* showing of personal jurisdiction under the District of Columbia's long-arm statute. That statute allows a court in the District to exercise personal jurisdiction over a non-resident defendant with respect to claims arising from the defendant's conduct in, *inter alia*, transacting business in the District of Columbia and contracting to supply services in the District of Columbia. D.C. Code § 13–423(a). Exercising personal jurisdiction over the individual defendants here comports with the requirements of due process, as Hoque and Parveen's operation of the franchise shows that they have purposefully availed themselves of the benefits of conducting business in the District, thereby establishing the "minimum contacts" necessary to confirm that the "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

      b. <u>Likelihood of Success on the Merits</u>

Dunkin' Donuts has shown a likelihood that it will succeed on the merits of its claims. According to the uncontested facts, Defendants failed to timely pay franchise, advertising, and other fees according to the terms of the franchise agreement. (Zullig Aff. ¶ 17). As a result, Dunkin' Donuts notified Defendants of their breach and gave them an opportunity to cure (as was required under the agreement).[2] When Defendants failed to cure (or apparently to respond at all), Dunkin' Donuts exercised their contractual right to terminate the franchise agreement. After the termination, Defendants were no longer authorized to operate a Dunkin' Donuts franchise or use Dunkin' Donuts trademarks in the operation of their restaurant.

---

[2] The franchise agreement required the parties to provide specific cure periods. These included a 30-day period and a 7-day period. (Compl. Ex. A). Dunkin' Donuts sent Defendants two notices: the first provided a 15-day cure period, the second provided a 7-day cure period. (*Id*. Exs. B & C). It is not clear why Dunkin' Donuts included a 15-day cure period rather than a 30-day period in the first notice, but in any event Dunkin' Donuts waited more than 30 days until it sent the second notice.

Dunkin' Donuts first basis for a preliminary injunction is that Defendants are infringing Dunkin' Donuts' trademarks by continuing to use those marks despite termination of the franchise agreement. To make out a claim for trademark infringement, a plaintiff must show "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods and services; and (5) that the defendant used the mark in a manner likely to confuse customers." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 189 (D.D.C. 2005) (citations omitted). Most of these elements are self-evident in this case. Dunkin' Donuts possesses registered trademarks, which is *prima facie* evidence of the marks' validity and ownership. 15 U.S.C. § 1115(a). It alleges that Defendants are using these trademarks in commerce to sell goods—*e.g.*, doughnuts, coffee, etc. Dunkin' Donuts further alleges that Defendants unauthorized use of its marks creates customer confusion because Defendants are operating what appears to be a Dunkin' Donuts franchise, even though the franchise has been terminated and Defendants have no right to continue using Dunkin' Donuts' trademarks. Given that a consumer would have no way of differentiating between an authorized and unauthorized franchise, it is likely that confusion will occur. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks . . . Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to [the franchisor].").

Dunkin' Donuts is also likely to succeed on its contract claims regarding the covenant not to compete. Pursuant to the terms of the franchise agreement, the covenant is governed by

Massachusetts law, which permits covenants not to compete as long as the limits are reasonable in nature and not aimed at restricting ordinary competition. *Boulanger v. Dunkin' Donuts Inc.*, 815 N.E.2d 572, 576-77 (Mass. 2004) ("A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest."); *Marine Contrs. Co. v. Hurley*, 310 N.E.2d 915, 921 (Mass. 1974) (100-mile limit coincides with the area in which the plaintiff performs almost all of its work and was precisely drawn to protect its goodwill). In this case, the Defendants agreed that for a period of two years following the termination of the franchise agreement they would not operate a competing business within a five-mile radius of the former franchise location. The scope, length, and geographic restriction of the covenant are reasonable to prevent a former franchisee from opening a competing doughnut business in the vicinity of its prior location. Because it is likely this covenant not to compete would be upheld, and it is uncontested that Defendants violated the franchise agreement and are no longer franchisees, Dunkin' Donuts is likely to succeed in enforcing the terms of the covenant. *See Boulanger v. Dunkin' Donuts Inc.*, 815 N.E.2d at 581 (upholding an identical covenant not to compete).

    c. <u>Irreparable Harm</u>

Dunkin' Donuts has shown that it is likely to suffer irreparable harm absent the issuance of a preliminary injunction because "trademark infringement raises a presumption of irreparable harm." *Cerveceria Modelo, S.A. de C.V. v. Cuvee*, 227 F. Supp. 2d 39, 40 (D.D.C. 2002). Courts have found that infringement may lead to "the dilution of the distinctiveness of [a] trademark, the loss of control of [] reputation and the diminishment of [] good will," all of which cause irreparable harm. *Sears, Roebuck & Co. v. Sears Fin. Network*, 576 F. Supp. 857, 864 (D.D.C. 1983).

As Dunkin' Donuts explains, "[d]espite the fact that the Franchise Agreement has been terminated, Defendant continues to operate a donut [restaurant] based at the former franchise location, the very same location[] as its former franchise, and it continues to use the Dunkin' Donuts Marks in connection with th[is] location[].  DD no longer exercises any control over the conditions in this store or the nature and quality of the products served therein.  Thus, while customers of Defendant's stores may believe they are dealing with an authorized DD franchisee, and may believe they are purchasing authentic DD products, they are not." (Mot. 8).  This is enough to establish a likelihood of irreparable harm—Defendants are operating an unauthorized Dunkin' Donuts location and depriving Dunkin' Donuts of the ability to control the use of its trademarks and assure the quality control necessary to protect the integrity of its reputation and goodwill.  In addition, the possibility of consumer confusion (discussed above) is likely to cause irreparable harm.  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) (collecting cases).

Dunkin' Donuts has also shown a likelihood of irreparable injury with respect to the covenant not to compete for many of the same reasons.  As it stands, Defendants are operating an unauthorized Dunkin' Donuts location within five miles (and in fact in the exact same location) of the previously authorized franchise.  Defendants are competing with authorized franchises, and are doing so without the limitations (and protections) normally required by Dunkin' Donuts.  This endangers Dunkin' Donuts' goodwill and reputation.  Absent relief, other franchisees may be incentivized to disregard their franchise agreements if they believe there are no adverse consequences to violating the covenant not to compete.  This is further evidence that Dunkin' Donuts is likely to suffer irreparable harm absent a preliminary injunction.

d.  <u>Balance of Equities</u>

The balance of equities favors an injunction. A preliminary injunction here would merely reinforce what is already the case—that Defendants are not authorized to operate a Dunkin' Donuts location absent a valid franchise agreement, which they do not have. Based on the uncontested facts, Defendants brought this fate upon themselves by not paying contractually obligated fees. Therefore, any harm to Defendants in enjoining them from operating their restaurant is outweighed by the harm to Dunkin' Donuts in allowing Defendants to continue operating an unauthorized franchise.

e.  <u>Public Interest</u>

The public interest will be served by the issuance of an injunction. As already discussed, Defendants are currently operating a restaurant which for all intents and purposes appears to be an authorized Dunkin' Donuts franchise, even though it is not. This deception may ultimately hurt the public not only by causing confusion over whether the location is actually a Dunkin' Donuts, but also because the quality and integrity of the product may suffer without the supervision of the franchisor.

## IV.  CONCLUSION

For the foregoing reasons, Dunkin' Donuts' Motion for a Preliminary Injunction is granted. Defendants are enjoined during the pendency of this matter from using Dunkin' Donuts' trademarks or operating a competing business within a five mile radius of the former franchise. Within 30 days, Defendants must file with the court a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. An appropriate Order accompanies this Memorandum Opinion.

Date:  May 5, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge